1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  PORT OF SEATTLE,                                    No.

10              Plaintiff,

11     v.                                              COMPLAINT FOR DAMAGES AND
                                                       DECLARATORY RELIEF
12  THE BOEING COMPANY,

13              Defendant.

14

15      Plaintiff Port of Seattle ("Port"), for its Complaint against Defendant The Boeing

16  Company ("Boeing"), alleges and states as follows:

17                              **I.      INTRODUCTION**

18
    1.     This is a civil action for cost recovery and declaratory judgment under sections 107(a)
19
    and 113(g)(2) of the federal Comprehensive Environmental Response, Compensation, and
20
    Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(g)(2), and for contribution and
21
    declaratory relief for the recovery of remedial action costs under Washington's Model Toxics
22
    Control Act ("MTCA"), Wash. Rev. Code Ann. §§ 70A.305.040 and 70A.305.080, relating to
23
    CERCLA response costs and MTCA remedial action costs associated with the Lower Duwamish
24
    Waterway ("LDW" or "Waterway") Superfund Site ("Site") in King County, Washington.
25

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 1

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Telephone 503.224.3380

2.      At the start of the 20th century, the Duwamish River meandered naturally among the mud flats south of the City of Seattle before emptying into Elliott Bay.  In the second decade of the century, in accordance with the will of the Washington legislature and King County, the lower few miles of the winding Duwamish River were transformed (through substantial dredging and filling) into a straightened commercial waterway whose center channel the U.S. Army Corps of Engineers ("Army Corps") would repeatedly dredge in the decades to follow, to allow vessel navigation within the LDW to support the growth of industry and commerce.

3.      Industry and commerce flourished throughout the 20th century along the LDW, with scores of industrial operators conducting activities including shipbuilding, shipyard maintenance, metal forging and fabrication, wood chemical treatment operations, and a wide variety of manufacturing operations including chemical, cement, and aircraft manufacturing.

4.      Although a wide variety of manufacturers came and went over the decades along the LDW, one industrial manufacturer – which has operated along the Waterway from 1917 to the present – dwarfs all others in terms of the scope, intensity, and longevity of its operations along the LDW: Boeing.

## The Boeing Company

5.      For over 100 years at 10 major facilities along the LDW, Boeing manufactured tens of thousands of commercial and military aircraft, missiles, and spacecraft, and conducted a wide variety of supporting operations (e.g., testing and salvage activities) that together generated extremely large quantities of toxic industrial waste.  Boeing has also owned or operated 23 other facilities in the vicinity of the LDW, including an industrial park and warehouses.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 2

6.      Boeing's facilities along and near the LDW ("Boeing LDW Facilities") have occupied nearly 300 acres along or draining to the Waterway, including nearly 600 buildings, 100 outfalls, over 100 polychlorinated biphenyl ("PCB") transformers, over 1,000 PCB capacitors, and more than 60 linear miles of rain-exposed PCB-contaminated caulking.

7.      Throughout the last century of industrial operations along the LDW, one facility stands out as the single largest source *by far* of PCBs released to the Waterway: Boeing Plant 2.  Boeing conducted high-intensity aircraft manufacturing operations at Plant 2, which, for years at a time, operated 24 hours per day and produced roughly 10,000 military aircraft in just the time period of 1942-1945.  During those years, Boeing Plant 2 produced hundreds of bombers every month in dozens of buildings covering millions of square feet of floor space, making Plant 2 one of the most heavily and intensely operated aircraft manufacturing plants in the country.

8.      Plant 2 continued to serve as Boeing's primary aircraft manufacturing center for decades following World War II.  All aspects of aircraft manufacturing took place at Plant 2, including fabrication of airplane parts, chemical milling, chemical conversion coating, tool-making, painting and paint stripping, metal finishing, heat treating, sheet metal forming, testing, and anodizing and electroplating, as well as storing and disposing of hazardous wastes.

9.      For decades, Boeing pumped PCBs from numerous transformer vaults (holding leaking transformers) at its Plant 2 facility directly to the LDW, with concentrations (as late as the 1990s) of up to 1 billion parts per billion ("ppb") – i.e., 100 percent PCB – detected in vault sludge, 460 million ppb (46 percent PCB) in the piping leading from the vault to the LDW, and 890,000 ppb in sediments near the base of the associated outfall.  To put those concentrations in context, the sediment PCB cleanup level in the United States Environmental Protection Agency's

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 3

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

1   ("EPA") cleanup plan for the LDW is just *2 ppb*.  Further, the 890,000 ppb concentration in

2   subsurface sediment is consistent with PCBs being released from Boeing Plant 2 over a long

3   period of time.

4   10.     Boeing's PCB sediment contamination footprint is far from limited to just the one hot

5   spot described above.  The sediments adjacent to the nearly one-mile length of Boeing Plant 2

6   were saturated with extremely high concentrations of PCBs, both in surface (top 10 cm) and

7   subsurface sediments.  Obvious PCB hot spots are also well documented immediately adjacent to

8

9   outfalls draining other Boeing LDW Facilities, such as the Boeing Developmental Center,

10  Military Flight Center, and North Boeing Field.

11  11.     Boeing has also released large magnitudes of other hazardous substances to the LDW,

12  including dioxins/furans, polycyclic aromatic hydrocarbons ("PAHs"), phthalates, arsenic, and

13  other metals.

14  12.     In 1950, *Boeing Magazine* (an internal company publication) candidly acknowledged,

15

16  "The Duwamish . . . is the natural collector for Boeing's fluid wastes; indeed, any unrestrained

17  liquid emptied on the Boeing premises is bound sooner or later to get into the Duwamish."

18  13.     Based on all LDW sampling, analysis, and remedy planning to date, PCBs are anticipated

19

20  to be *by far* the biggest remedy cost driver among LDW contaminants in EPA's selected remedy

21  for the Site.  Data show that the greatest number of LDW sediment remedial action level

22  ("RAL") exceedances, which trigger the requirement of dredging or other costly remediation, are

23  from PCBs.  In terms of the volume of sediments that will need to be dredged or otherwise

24  actively remediated, PCBs are by far the predominant contaminant driving the need for that

25  costly remediation.

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 4

14.     Boeing has released PCBs to the LDW in a magnitude (i.e., reflecting volumes and PCB concentrations of released materials) that far exceeds that of any other industrial operator (or indeed, nearly all other industrial operators put together).

15.     Crucial for the LDW and its cleanup, the PCBs released from Boeing LDW Facilities over the course of several decades have not remained confined to the immediate vicinity of those facilities.  To the contrary, the natural dynamism of the LDW (including daily tidal influences and periodic high-volume flows from upstream) has dispersed Boeing-contaminated sediments widely within the LDW through initial sediment transport and deposition at the time of discharge from Boeing LDW Facilities, as well as through ongoing resuspension and redistribution of sediments previously contaminated by earlier Boeing releases.

16.     The fact of Boeing's high-concentration PCB contamination being widely dispersed throughout the LDW, combined with EPA's very low concentration thresholds for requiring dredging or other active remediation (i.e., 130 to 240 ppb), means that Boeing is by far the greatest cause of LDW PCB contamination, and that PCB contamination is by far the biggest driver of LDW cleanup costs, which are anticipated to be as much as $1 billion if not more.

## The Lower Duwamish Waterway Group

17.     In 2000, Boeing, the Port, the City of Seattle (the "City"), and King County (the "County") formed the Lower Duwamish Waterway Group ("LDWG") and entered into an Administrative Order on Consent with the EPA and the Washington Department of Ecology ("Ecology").  That order required the LDWG parties to conduct a remedial investigation and feasibility study pursuant to both CERCLA and MTCA to investigate the nature and extent of LDW contamination and develop remedial alternatives for the LDW sediment Site.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 5

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

18.     The Port joined LDWG in 2000 as an act of responsible public stewardship and as part of a plan to work proactively with EPA to achieve an efficient and reasonable LDW cleanup.  At that time, the Port and the other LDWG parties anticipated that the remedial investigation and feasibility study would take no more than a few years.  Relying on that time frame, the Port agreed to share costs of the remedial investigation and feasibility study with Boeing, the City, and the County equally – 25 percent per party – as an interim arrangement pending reallocation of those costs based on equitable factors regarding responsibility for the contamination at issue.

19.     Although EPA had signaled support for a streamlined approach (which the Port had relied on when LDWG was first created), ultimately, the Site was placed on the National Priorities List in 2001 and the remedial investigation and feasibility study process ended up taking 12 years.

20.     In addition, the 2000 Administrative Order on Consent was amended to provide for additional studies, sampling, and analysis to prepare the way for EPA's selected remedy.  The Port agreed to continue funding that work, which continues at present, for the sake of moving the LDW remedy process forward without delay.

21.     Thus, for the last 22 years, the Port has been paying a share equal to that of Boeing for the investigation and planning necessary to perform the LDW cleanup.  The total response costs shared by the LDWG parties since 2000 now exceeds $60 million, and that total continues to grow.

**<u>Boeing Must Pay Its Fair Share</u>**

22.     Although the LDWG parties have shared costs to implement the Administrative Order on Consent equally since 2000 ("LDWG Shared Costs"), those parties did not contribute equally to

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 6

**STOEL RIVES** LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
*Telephone 503.224.3380*

1    the contamination that has necessitated the investigation and planning for an LDW sediment

2    cleanup; far from it.  As described above, Boeing is *by far* the LDWG party with the greatest

3    responsibility for LDW contamination.

4    23.      By contrast, the Port's role in the LDW has been that of an owner/landlord, not an

5    industrial manufacturer or operator.  The Port has leased its facilities to tenants that primarily

6    conduct cargo shipping and storage activities.  These operations are far cleaner than those of

7    Boeing, whose intensive manufacturing operations used and regularly spilled large magnitudes

8    of PCBs and other hazardous substances, and released them to the LDW.

9    24.      The Port, like many other parties along the Waterway, is a potentially responsible party

10    ("PRP") for the Site primarily because it just happens to own property in the vicinity of Boeing

11    and other polluters that contributed the vast majority of PCBs and other hazardous substances to

12    the LDW.  Port facilities, by contrast, have released a *de minimis* (if not *de micromis*) amount of

13    hazardous substances to the LDW.

14    25.      As such, the Port has essentially been subsidizing Boeing's LDW investigation and

15    cleanup planning costs for nearly the past quarter century.  We are now at the point in the

16    cleanup process where EPA expects that LDW PRPs will enter into a new agreement to fund and

17    implement actual construction of EPA's remedy – i.e., the most expensive part of the remedy

18    process.  The Port is and has been willing to pay its fair share toward such efforts.  It is now time

19    for Boeing to pay its fair share.

20    26.      Boeing's manufacturing operations along the LDW span over a century, including the

21    decades of World War II and the Cold War.  At its heart, the LDW Superfund Site is a military-

22    industrial cleanup site with PCBs as the primary hazardous substance driving the need for its

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 7

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

costly cleanup.  And the party with the greatest role *by far* in the historical military-industrial manufacturing that has resulted in widespread PCB contamination in the Waterway is Boeing. As noted, the scope, intensity, and longevity of Boeing's operations (as well as the PCB releases that came with those operations) far exceed that of any other party, now or in the past, along the LDW.

27.     Boeing has profited for decades in part through inexpensive disposal of its wastes through dumping them in the LDW (i.e., externalizing its waste disposal costs).  It is therefore fair and equitable for Boeing to reimburse the Port for the millions of dollars in response costs that the Port has fronted in the last 22 years, which should have been paid by Boeing based on its outsized responsibility for LDW contamination.  It is also fair and equitable that this Court should set Boeing's fair share for the substantial remedy costs yet to be incurred.

28.     The Port has made diligent efforts over the past eight years (and the last year in particular), at all levels of its organization, to amicably resolve the parties' relative responsibility for LDW cleanup costs.

29.     The Port sought a resolution that would be consistent with the "polluter pays" principle at the heart of CERCLA and MTCA, and a resolution that would be equitable for the Port and its taxpayers who work hard and support the Port on numerous initiatives.  Those initiatives include restoring fish and wildlife habitat and public access spaces along the LDW, and promoting environmental justice and employment opportunities for communities living along and near the LDW.

30.     Despite the Port's diligent efforts to achieve an amicable and equitable resolution, Boeing thus far has not paid its fair share, i.e., a share reflecting the "polluter pays" principle and the fact

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 8

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

1     that Boeing is *by far* the biggest contributor of PCBs and other hazardous substances to the

2     LDW.

3     31.     If local taxpayers had to pay extra LDW cleanup costs to fill the gap between what

4     Boeing is *willing* to pay and what Boeing equitably *should* pay, those are dollars that would not

5     be available to support environmental, employment, and environmental justice initiatives such as

6

7     those described above.

8     32.     The Port cannot accept an arrangement whereby local taxpayers would be stuck paying

9     tens of millions of dollars *beyond* the fair shares of the Port, as well as the City and County, thus

10     effectively having these local governments pay a substantial portion of Boeing's cleanup bill.

11     Boeing has gleaned billions of dollars in profits over the past several decades partly through

12     externalizing its waste disposal costs by dumping wastes into the Lower Duwamish River.  The

13     Port, as a steward of public funds, cannot agree to redirect taxpayers' funds from projects and

14     programs that benefit the public in order to permit Boeing to pay far less than its fair share of

15

16     LDW cleanup costs.

17     33.     The Port seeks to recover from Boeing under CERCLA for the necessary costs of

18     response that the Port has incurred in a manner consistent with the National Contingency Plan,

19     40 C.F.R. pt. 300, *et seq.*, and that are the result of releases, threatened releases, and/or disposals

20     of hazardous substances from current and historical facilities owned and/or operated by Boeing

21     along and near the LDW, and from which Boeing has arranged for the disposal of hazardous

22

23     substances into the LDW.

24     34.     The Port also seeks to recover from Boeing the remedial action costs, within the meaning

25     of MTCA, incurred by the Port in undertaking remedial actions that are the substantial equivalent

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 9

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

1   of actions conducted or supervised by Ecology, and that the Port has incurred as a result of

2   releases, threatened releases, and/or disposals of hazardous substances from current and

3   historical facilities owned and/or operated by Boeing along and near the LDW, and from which

4   Boeing has arranged for the disposal of hazardous substances into the LDW.  The Port also seeks

5

6   to recover from Boeing its reasonable attorneys' fees and expenses incurred in pursuing this civil

7   action, pursuant to Revised Code of Washington section 70A.305.080.

8   35.     The Port also seeks a declaratory judgment holding Boeing liable for response costs and

9   remedial action costs under CERCLA and MTCA, respectively, to be incurred by the Port in the

10  future.

11
                          **II.     JURISDICTION AND VENUE**
12

13  36.     This Court has exclusive jurisdiction over this CERCLA action pursuant to section

14  113(b) of CERCLA, 42 U.S.C. § 9613(b).

15  37.      The Court has jurisdiction over the Port's request for declaratory relief pursuant to the

16  Declaratory Judgments Act, 28 U.S.C. § 2201, and section 113(g)(2) of CERCLA, 42 U.S.C. §

17  9613(g)(2),.

18  38.     The Port's CERCLA and MTCA claims arise from a common nucleus of operative facts

19  and are part of the same case or controversy, further adjudication of the CERCLA and MTCA

20  claims at the same time furthers judicial economy, therefore this Court has jurisdiction over the

21  state law MTCA claims pursuant to 28 U.S.C. § 1367.

22

23  39.     Venue in this Court is proper pursuant to section 113(b) of CERCLA, 42 U.S.C.

24  § 9613(b), because the releases and disposals of hazardous substances alleged herein occurred in

25  this District.

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 10

**STOEL RIVES** LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
*Telephone 503.224.3380*

### III.   THE PARTIES

40.     The Port is a Washington municipal corporation in King County, Washington.

41.     Boeing is a Delaware corporation with its principal place of business in Illinois.

### IV.   FACTUAL BACKGROUND

42.     Paragraphs 1 through 41 are realleged and incorporated as if set forth fully herein.

#### Development of the LDW

43.     Beginning in 1909, the State Legislature passed a series of laws that enabled local governments to create "waterway districts" for the economic development of the state.  These waterway districts were intended to promote the public purposes of commerce and navigation, including through widening and straightening water bodies.

44.     To accomplish those purposes, the Legislature authorized waterway districts to straighten, deepen, and widen rivers and streams, and to acquire any needed "rights of way" in order to do so.  1917 Wash. Laws, ch. 152, § 2.

45.     In 1911, the King County Board of Commissioners created the Commercial Waterway District No. 1 of King County ("CWD").  They approved a plan to straighten, widen, and deepen the lower portion of the Duwamish River, and to acquire a 500-foot-wide right-of-way over the resulting engineered waterway.  Those activities began in approximately 1913.

46.     In 1924, the center portion of the length of the Waterway was designated as a federal navigation channel and the Army Corps took over the dredging and maintenance of that area. Specifically, the federal navigation channel constitutes a 250-foot-wide center swath of the 500-foot-wide Waterway throughout its five-mile length (such that there are 125 feet of non-federally-maintained right-of-way on either side of the federal navigation channel).  The Army

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 11

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

1   Corps has maintained responsibility for the federal navigation channel from 1924 to the present.

2   The Army Corps also issued (and still issues) permits to adjoining landowners that wish to

3   dredge, fill, or construct docks or bulkheads in the Waterway.

4   47.     The straightening, widening, and deepening of the Duwamish River progressed upstream

5   until the engineered Waterway reached its present configuration – namely, five river miles in

6   length, from Harbor Island at the downstream extent to Turning Basin Number 3, next to the

7

8   Boeing Developmental Center, at the upstream extent.

9                                    **The Boeing Company**

10  48.     From approximately 1910 to the present, Boeing has owned and/or operated the Boeing

11  LDW Facilities described below in paragraphs 49-59.

12

13  49.     From approximately 1910 through 1970, Boeing owned and operated the facility known

14  as Boeing Plant 1, located at 200 S.W. Michigan Street, Seattle, WA.

15  50.     From approximately 1936 to the present, Boeing has owned and operated the facility

16  known as Boeing Plant 2, located at 7755 East Marginal Way South, Tukwila, WA.

17  51.     From approximately the late 1930s or early 1940s to the present, Boeing has owned

18  and/or operated facilities at North Boeing Field, located at 7700 East Marginal Way South,

19  Seattle, WA.

20

21  52.     From approximately the late 1930s or early 1940s through 2009, Boeing operated the

22  facility known as the Electronics Manufacturing Facility, located at 7355 Perimeter Road South,

23  Seattle, WA.

24  53.     From approximately 1955 to the present Boeing has owned and operated the facility

25  known as the Military Flight Center, located at 10002 East Marginal Way South, Tukwila, WA.

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 12

**STOEL RIVES** LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
*Telephone 503.224.3380*

54.     From approximately 1955 to the present Boeing has owned and operated the facility known as the Boeing Developmental Center, located at 9725 East Marginal Way South, Tukwila, WA.

55.     From approximately 1955 to the present, Boeing has owned and operated the facility known as Boeing South Park, located at 1420 Trenton Street, Seattle, WA.

56.     From approximately 1956 to the present, Boeing has owned and operated the facility known as the Thompson Property, located at 8811 East Marginal Way South, Tukwila, WA.

57.     From approximately 1957 through 1970, Boeing operated the facility known as the Missile Production Center, located at and near 4735 East Marginal Way South, Seattle, WA.

58.     From approximately 1984 to the present, Boeing has owned and operated the facility known as the Isaacson Property, located at 8625 East Marginal Way South, Tukwila, WA.

59.     Boeing has also owned or operated 23 other facilities in the vicinity of the LDW, including an industrial park and warehouses.

60.     Current and historical operations at the Boeing LDW Facilities include, but are not limited to, aircraft and weapons manufacturing and research.

61.     Operations at the Boeing LDW Facilities have entailed the use of materials that contained hazardous substances, including but not limited to PCBs, metals, dioxins and furans, PAHs, and phthalates.

62.     During its decades of operations, Boeing has released and disposed of hazardous substances, including but not limited to those referenced in paragraph 61, in the LDW.  Those releases and disposals have included, but have not been limited to, PCBs released and/or disposed of from leaking transformers and conveyed from the transformer vault sumps directly

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 13

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

1   to the LDW via piping, PCBs leaching from concrete joint caulking and building paints and

2   caulks onto facility surfaces and conveyed therefrom to the LDW via stormwater runoff, and

3   PCBs in hydraulic fluids, cutting or cooling oils or fluids, or other materials that were spilled or

4   leaked to facility surfaces and were conveyed therefrom to the LDW via storm sewers or

5   stormwater sheet flow.

6

7                                    **The Port of Seattle**

8   63.     From the 1960s to the present, the Port has owned properties *adjacent to* the LDW, i.e.,

9   *not* within the former Commercial Waterway District No. 1 of King County ("CWD") right-of-

10  way.  The Port has leased those properties to tenants for a variety of operations including

11  (primarily) cargo storage and shipping.  The Port's role along the LDW from the 1960s to the

12  present has been that of a landlord.  And the Port's leased facilities collectively have been an

13  extremely small source of contaminants released to the LDW relative to the magnitude of PCBs

14  and other contaminants released by Boeing as well as other industrial manufacturers operating

15  along the Waterway.

16

17  64.     With respect to the right-of-way, by the late 1950s, the CWD had (decades prior)

18  completed its mission of straightening and otherwise engineering the Waterway, and its only

19  remaining role of any significance was to make sure that there were no physical obstructions

20  (e.g., logs) to navigation in the LDW (although it was the Army Corps, not the CWD, that

21  reviewed and approved proposals from adjacent landowners to dredge or fill or erect any

22  structures within the Waterway).

23

24  65.     With few remaining assets, the CWD then attempted to compel LDW-adjacent industrial

25  owners and operators with docks or other structures within the Waterway to enter into leases

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 14

**STOEL RIVES** LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
*Telephone 503.224.3380*

1  with the CWD.  This effort lasted only a few years before it was declared unlawful by the

2  Washington Supreme Court in the 1963 case of *Commercial Waterway District No. 1 of King*

3  *County v. Permanente Cement Co.*, 379 P.2d 178 (Wash. 1963).  The Court concluded that the

4  CWD held only very limited rights with respect to the LDW right-of-way, which it considered a

5  public water highway.  The Court specifically concluded that the CWD could not sell or lease

6  any portion of the 500-foot-wide right-of-way, and did not have the right to exclude third parties

7  from accessing the right-of-way unless they were interfering with navigation or other rights of

8  the general public.

9

10  66.     In the wake of the *Permanente* decision (and in the same year), the Washington

11  Legislature enacted new legislation granting commercial waterway districts the authority to

12  dissolve and transfer their "assets, liabilities and functions" to a local port district with

13  jurisdiction.  1963 Wash. Laws, ch. 97, § 1 ("Commercial Waterway Districts—Acquisition by

14  Port Districts").

15

16  67.     Consistent with the intent of the Legislature, in August 1963, the Port agreed to assume

17  all of the assets, liabilities and functions of the CWD, and the CWD dissolved.

18  68.     When the Port acquired the assets of the CWD in 1963, the Port knew, based on the

19  *Permanente* decision, that it could not sell or lease any portion of the LDW right-of-way.

20

21             **The Port Has Incurred Substantial Costs For Which Boeing Is Liable**

22  69.     Since 2000, the LDWG parties have collectively incurred approximately $60 million in

23  LDWG-Shared Costs to implement the Administrative Order on Consent (as amended), and the

24  Port has incurred approximately $15 million as its share of those costs.

25

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 15

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

70.     In addition to its share of LDWG-Shared Costs, the Port has incurred approximately $8 million of other recoverable costs, e.g., employee, overhead, and outside counsel costs (collectively, "Additional Costs"), that were necessary for implementing the Administrative Order on Consent but that were not covered under LDWG's interim cost-sharing agreement.

71.     The Port's Additional Costs as well as its share of past LDWG-Shared Costs were necessary for responding to a release, threatened release, or disposal of hazardous substances and were necessary for implementing the Administrative Order on Consent (as amended), and were incurred in a manner consistent with the National Contingency Plan.  The Port's Additional Costs as well as its share of past LDWG-Shared Costs were incurred for actions that were the substantial equivalent of an Ecology-conducted or Ecology-supervised remedial action.  The Port will continue to incur CERCLA response costs and MTCA remedial action costs in the future.

72.     The aggregate magnitude of PCBs and other hazardous substances released or disposed of from Boeing LDW Facilities to the LDW – where magnitude reflects volumes and contaminant concentrations in released materials – is far greater than the aggregate magnitude of the same released or disposed of from Port facilities along the LDW.

73.     Hazardous substance releases and disposals to the LDW for which Boeing is liable under CERCLA and MTCA have adversely impacted the LDW's sediments to a far greater degree than any releases or disposals for which the Port may be liable.

74.     Boeing's releases and disposals of hazardous substances to the LDW are, compared to releases and disposals for which the Port may bear responsibility, far greater drivers of the need for the Site's remedial investigation, feasibility study, other costs to implement the 2000

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 16

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

1    Administrative Order on Consent as amended, and future remedial action work to implement

2    EPA's selected remedy.

3                              **FIRST CAUSE OF ACTION**
4                          **COST RECOVERY UNDER CERCLA**

5    75.    Paragraphs 1 through 74 are realleged as if set forth fully herein.

6    76.    This is an action for cost recovery under section 107(a) of CERCLA, 42 U.S.C.

7    § 9607(a).  To prevail on a claim for private cost recovery under CERCLA § 107(a), 42 U.S.C.

8    § 9607(a), a plaintiff must establish that there has been a "release" or "threatened release" of a

9    "hazardous substance" at or from a "facility," which caused the plaintiff to incur "response

10   costs" that were "necessary" and "consistent with the national contingency plan," and that the

11   defendant is within at least one of four classes of "persons" subject to liability under

12   section 107(a).

13

14   77.    The classes of "persons" subject to liability under CERCLA section 107(a) include, in

15   pertinent part, "(1) the owner and operator of a vessel or a facility, (2) any person who at the

16   time of disposal of any hazardous substance owned or operated any facility at which such

17   hazardous substances were disposed of, [and] (3) any person who by contract, agreement, or

18   otherwise arranged for disposal or treatment, or arranged with a transporter for transport for

19   disposal or treatment, of hazardous substances owned or possessed by such person, by any other

20   party or entity, at any facility or incineration vessel owned or operated by another party or entity

21   and containing such hazardous substances . . . ."  42 U.S.C. § 9607(a)(1)-(3).

22

23   78.    Boeing and the Port are "persons" within the meaning of CERCLA section 101(21), 42

24   U.S.C. § 9601(21).

25

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 17

**STOEL RIVES LLP**
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

79.     Boeing LDW Facilities and the in-water portion of the LDW Site are "facilities" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

80.     Boeing is or was the "owner or operator" of Boeing LDW Facilities within the meaning of section 101(20) of CERCLA, 42 U.S.C. § 9601(20).

81.     PCBs, dioxins/furans, PAHs, phthalates, arsenic, and other metals are "hazardous substances" within the meaning of section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

82.     There have been "releases," threatened "releases," and "disposals" (including but not limited to those described in paragraphs 9-16 and 62 above) of "hazardous substances" (including but not limited to PCBs, dioxins/furans, PAHs, phthalates, arsenic, and other metals) at or from Boeing LDW Facilities – including facilities where Boeing is the current "owner or operator" and facilities that Boeing owned or operated at the time of such disposals – and those releases and disposals resulted in the Port's incurrence of "response" costs (described below) within the meaning of sections 101(22), 101(14), 101(25), 101(29), and 107 of CERCLA, 42 U.S.C. §§ 9601(22), 9601(14), 9601(25), 9601(29), and 9607.

83.     A person may qualify as an arranger under CERCLA's liability framework when the person takes intentional steps to dispose of a hazardous substance.  Also, arranger liability premised on a person's control over the disposal process is well established.

84.     Boeing has arranged for the disposal of hazardous substances from some or all of Boeing LDW Facilities to the LDW.

85.     Boeing has owned, exercised control over, and had the obligation to dispose of wastes containing hazardous substances at the Boeing LDW Facilities described above.  Those wastes include, but are not limited to, process wastes (from electro-plating operations and other

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 18

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

1   manufacturing activities) discharged purposefully into the LDW as well as Boeing Plant 2

2   Salvage Yard waste oils, oil-soaked metal chips and borings (called "turnings"), and oil/machine

3   "milk" from the borings that were allowed to drain/spill to outdoor ground surfaces and from

4   there to a nearby drainage ditch and/or storm drains discharging to the LDW.

5   86.     Boeing took intentional steps to dispose of wastes containing hazardous substances in the

6   LDW.  Those steps include, but are not limited to, the purposeful discharge of industrial process

7   wastes from Boeing Plant 2, Boeing Plant 1, and other facilities directly to the LDW, as well as

8   the deliberate disposals of Boeing Plant 2 Salvage Yard wastes into the LDW via a drainage

9   ditch or storm sewers, as described above in paragraph 85.

10  87.     The CERCLA response costs incurred by the Port include LDW remedial investigation

11  and feasibility study costs, remedial design costs, and other costs to implement the 2000

12  Administrative Order on Consent (as amended), including Port employee, overhead, and outside

13  counsel costs.  These costs include retaining and supervising LDWG common consultants to

14  perform the sediment sampling, analysis, reporting, planning, and agency communications (and

15  numerous other tasks) associated with the work to implement the Administrative Order on

16  Consent (as amended).

17  88.     The response costs incurred by the Port were reasonable, necessary, and consistent with

18  the National Contingency Plan within the meaning of section 107 of CERCLA, 42 U.S.C.

19  § 9607.  Costs incurred to implement an EPA order (such as the Administrative Order on

20  Consent) are presumptively necessary and consistent with the National Contingency Plan.

21  89.     Apart from this action, the Port is not, and has not been, engaged in a civil action under

22  42 U.S.C. § 9606 or 42 U.S.C. § 9607(a) with respect to the costs at issue in this action.

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 19

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

90.     Pursuant to the terms of the Administrative Order on Consent, the Port will not resolve its liability to the United States or the State of Washington with respect to costs necessary to implement the Administrative Order on Consent until satisfaction of the requirements of the Administrative Order on Consent, which will not occur until the Port and the other LDWG parties demonstrate, in writing, and certify to the satisfaction of EPA and Ecology, that all activities required under the Administrative Order on Consent have been performed, and EPA and Ecology have approved that certification.

91.     Accordingly, because the Port and the other LDWG parties have not completed the work required under the Administrative Order on Consent (as amended), the Port has not resolved its liability to the United States or the State of Washington within the meaning of 42 U.S.C. § 9613(f)(3)(B) with respect to the costs at issue in this cause of action.

92.     The Port currently does not satisfy the requirements to bring a contribution action under CERCLA section 113(f), 42 U.S.C. § 9613(f), but it does satisfy the requirements for, and may pursue, a cost recovery action under CERCLA section 107(a), 42 U.S.C. § 9607(a).

93.     Accordingly, based on the foregoing facts and legal principles, and pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a), the Port is entitled to cost recovery from Boeing for LDW response costs incurred by the Port.

94.     The Port is entitled to pre- and post-judgment interest on the amount recovered under this claim pursuant to CERCLA section 107(a), 42 U.S.C. § 9607(a).

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 20

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

**SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT OF CERCLA LIABILITY FOR RESPONSE COSTS**

95.     Paragraphs 1 through 94 are realleged as if set forth fully herein.

96.     This is a claim for declaratory judgment under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. § 2201.  Within the meaning of those statutes, an actual and substantial controversy exists between the Port and Boeing regarding their respective rights and obligations related to the costs that the Port has incurred and will incur to implement the 2000 Administrative Order on Consent (as amended) or otherwise respond to releases or threatened releases to the LDW.

97.     The Port will continue to incur CERCLA response costs in the future, including additional costs to implement the Administrative Order on Consent (as amended).

98.     Pursuant to 42 U.S.C. § 9613(g)(2) and 28 U.S.C. § 2201, the Port is entitled to a declaratory judgment that Boeing is liable to the Port for the Port's future response costs, together with pre- and post-judgment interest, that are necessary and consistent with the National Contingency Plan for responding to releases, threatened releases, or disposals of hazardous substances to the LDW from any of the Boeing LDW Facilities.

**THIRD CAUSE OF ACTION**
**RECOVERY OF REMEDIAL ACTION COSTS UNDER MTCA**

99.     Paragraphs 1 through 98 are realleged as if set forth fully herein.

100.    This is an action for recovery of remedial action costs, including reasonable attorneys' fees and expenses, under MTCA, Wash. Rev. Code Ann. § 70A.305.080.  MTCA's liability scheme is substantially similar to CERCLA, outlining categories of potentially liable persons ("PLPs") that are "strictly liable, jointly and severally, for all remedial action costs . . . resulting

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 21

**STOEL RIVES** LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
*Telephone* 503.224.3380

1   from the releases or threatened releases of hazardous substances" at or from a facility.  *Id.* §

2   70A.305.040(2).  The PLP categories are (in pertinent part for this Complaint): "(a) The owner

3   or operator of the facility; (b) Any person who owned or operated the facility at the time of

4   disposal or release of the hazardous substances; [or] (c) Any person who owned or possessed a

5   hazardous substance and who by contract, agreement, or otherwise arranged for disposal or

6   treatment of the hazardous substance at the facility, or arranged with a transporter for transport

7   for disposal or treatment of the hazardous substances at the facility, or otherwise generated

8   hazardous wastes disposed of or treated at the facility[.]"  *Id.* § 70A.305.040(1).

9

10   101.    Unlike CERCLA, there is no intent element required for "arranger" liability under

11   MTCA.

12   102.    Whereas CERCLA liability applies to owners or operators at the time of "disposal" of

13   hazardous substances, MTCA applies more broadly to owners or operators at the time of

14   "disposal *or release*" of hazardous substances.  *Compare* 42 U.S.C. § 9607(a)(2) *with* Wash.

15   Rev. Code Ann. § 70A.305.040(1)(b) (emphasis added).  Therefore, because "release" is

16   included as well as "disposal," constraints on the definition of "disposal" do not bar potential

17   liability under this MTCA provision in the way they might under its CERCLA equivalent.

18   103.    Under MTCA, "remedial action costs" explicitly include "reasonable attorneys' fees and

19   expenses."  Wash. Rev. Code Ann. § 70A.305.080.  Furthermore, "[t]he prevailing party in [an

20   action for recovery of remedial action costs under Wash. Rev. Code Ann. § 70A.305.080] shall

21   recover its reasonable attorneys' fees and costs."  *Id.*

22

23   104.    Boeing and the Port are "persons" within the meaning of Revised Code of Washington

24   section 70A.305.020(24).

25

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 22

**STOEL RIVES** LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
*Telephone* 503.224.3380

105.    Boeing LDW Facilities and the in-water portion of the LDW Site are "facilities" under Revised Code of Washington section 70A.305.020(8).

106.    Boeing is or was the "owner or operator" of Boeing LDW Facilities within the meaning of Revised Code of Washington section 70A.305.020(22).

107.    PCBs, dioxins/furans, PAHs, phthalates, arsenic, and other metals are "hazardous substances" within the meaning of Revised Code of Washington section 70A.305.020(13).

108.    There have been "releases" and/or threatened "releases" (including but not limited to those described in paragraphs 9-16 and 62 above) of "hazardous substances" (including but not limited to PCBs, dioxins/furans, PAHs, phthalates, arsenic, and other metals) at or from Boeing LDW Facilities – including facilities where Boeing is the current "owner or operator" and facilities that Boeing owned or operated at the time of the releases – and those releases resulted in the Port's incurrence of remedial action costs (described below) within the meaning of Revised Code of Washington sections 70A.305.020(8), -(13), -(22), -(24), and -(32); 70A.305.040; and 70A.305.080.

109.    In addition, based on the foregoing facts (including those asserted in paragraphs 85-86 above) and applicable law, Boeing arranged for the disposal of hazardous substances, within the meaning of Revised Code of Washington section 70A.305.040, from some or all of the Boeing LDW Facilities to the LDW.

110.    The MTCA remedial action costs incurred by the Port included LDW remedial investigation and feasibility study costs, remedial design costs, and other costs to implement the Administrative Order on Consent (as amended), including Port employee, overhead, and outside counsel costs.  These costs include retaining and supervising LDWG common consultants to

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 23

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

1  perform the sediment sampling, analysis, reporting, planning, and agency communications (and

2  numerous other tasks) associated with the work to implement the Administrative Order on

3  Consent (as amended).

4

5  111.   The remedial action costs incurred by the Port were the substantial equivalent of an

6  Ecology-conducted or Ecology-supervised remedial action, within the meaning of Revised Code

7  of Washington section 70A.305.080.

8  112.   Accordingly, pursuant to Revised Code of Washington section 70A.305.040 and

9  70A.305.080, the Port is entitled to contribution relief for the recovery of remedial action costs

10  from Boeing based on such equitable factors as this Court determines are appropriate.  Such

11  remedial action costs include the Port's reasonable attorneys' fees and expenses, including those

12  incurred and to be incurred in pursuing the case at bar as well as reasonable attorneys' fees and

13  expenses incurred since approximately 2000 pertaining to the Port's involvement in studying the

14  nature and extent of LDW Site sediment contamination and planning for its remediation.

15

16                    **FOURTH CAUSE OF ACTION**
                **DECLARATORY JUDGMENT UNDER MTCA**

17

18  113.   Paragraphs 1 through 112 are realleged as if set forth fully herein.

19  114.   Based on the foregoing facts and applicable law, the Port is also entitled, pursuant to

20  Revised Code of Washington sections 70A.305.040 and 70A.305.080, to a declaratory judgment

21  that Boeing is liable to the Port for the Port's future-incurred remedial action costs (including

22  reasonable attorneys' fees and expenses), together with pre- and post-judgment interest, that are

23  incurred for remedial actions that are the substantial equivalent of an Ecology-conducted or

24  Ecology-supervised remedial action within the meaning of Revised Code of Washington section

25  70A.305.080.

26

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 24

**STOEL RIVES** LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380

**PRAYER FOR RELIEF**

WHEREFORE, the Port respectfully requests the Court enter judgment in its favor and against Boeing on the causes of action of this Complaint as follows:

1.      On its First Cause of Action, judgment in favor of the Port and against Boeing for the Port's past necessary response costs that are consistent with the National Contingency Plan and incurred as a result of releases and disposals of hazardous substances from Boeing LDW Facilities to the LDW, in an amount to be proven at trial;

2.      On its Second Cause of Action, judgment declaring that Boeing is liable for the Port's future necessary costs that are consistent with the National Contingency Plan and that the Port will incur as a result of releases and disposals of hazardous substances from Boeing LDW Facilities to the LDW;

3.      On its Third Cause of Action, judgment in favor of the Port and against Boeing for the Port's past remedial action costs (including reasonable attorneys' fees and expenses) incurred as a result of releases of hazardous substances from Boeing LDW Facilities to the LDW, for remedial actions that were the substantial equivalent of an Ecology-conducted or Ecology-supervised remedial action within the meaning of Revised Code of Washington section 70A.305.080, in an amount to be proven at trial, and judgment in favor of the Port and against Boeing for the Port's reasonable attorneys' fees and expenses incurred in pursuing the case at bar, pursuant to Revised Code of Washington section 70A.305.080;

4.      On its Fourth Cause of Action, a declaratory judgment that Boeing is liable to the Port for the Port's future remedial action costs (including reasonable attorneys' fees and expenses) that are incurred for remedial actions that are the substantial equivalent of an Ecology-

COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 25

**STOEL RIVES** LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
*Telephone* 503.224.3380

1   conducted or Ecology-supervised remedial action within the meaning of Revised Code of

2   Washington section 70A.305.080.

3          5.      As to all claims for relief, judgment for pre- and post-judgment interest on

4   response costs and/or remedial action costs incurred or to be incurred by the Port; and

5

6          6.      As to all claims for relief, judgment for all costs and expenses incurred in this

7   action, to the extent provided for by law, and such other and further relief as this Court may

8   deem just and proper.

9          DATED this 19th day of July, 2022.

10                                                     STOEL RIVES LLP

11
                                                       /s/Maren R. Norton
12                                                     Maren R. Norton, WSBA No. 35435
                                                       maren.norton@stoel.com
13
                                                       /s/James T. Graves
14                                                     James T. Graves, WSBA No. 48033
                                                       james.graves@stoel.com
15

16                                                     Stoel Rives LLP
                                                       600 University St., Ste. 3600
17                                                     Seattle, WA 98101
                                                       Tel.: (206) 624-0900
18
                                                       *Attorneys for Plaintiff Port of Seattle*
19

20

21

22

23

24

25

26


COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF - 26

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Telephone 503.224.3380