HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PORT OF SEATTLE,

        Plaintiff,

v.

THE BOEING COMPANY,

        Defendant.

No. 2:22-cv-00993-RAJ

**PORT OF SEATTLE'S OPPOSITION TO THE BOEING COMPANY'S MOTION TO STAY**

## I. INTRODUCTION

Through this litigation, the Port of Seattle ("Port") seeks to recover costs it has paid, funded by its taxpayers, associated with the cleanup of contamination caused by The Boeing Company ("Boeing") at the Lower Duwamish Waterway ("LDW") Superfund Site. The Port does not, as Boeing contends, seek to "circumvent" a separate, non-binding cost allocation process that the parties initiated in 2014 (the "Allocation"). Dkt. #10 at p. 1. The Allocation has now all but concluded and, pursuant to the terms of the Memorandum of Agreement ("MOA") governing the Allocation process, the Port declined its allocated share.

The Court should not grant Boeing's unnecessary request to stay the litigation for eight months. A stay is not warranted because, contrary to Boeing's assertions, a stay would cause hardship to the Port; Boeing will suffer no hardship by proceeding with the litigation in a timely

PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY - 1
(2:22-cv-00993-RAJ)

116597963.1 0061365-00062

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Telephone 503.224.3380

manner; and any potential settlements with third parties will not affect the Port's claims or reshape this lawsuit.

## II. FACTUAL BACKGROUND

The Port's Complaint sets forth the history of its involvement in the LDW Superfund Site, including that for the past 22 years, the Port has paid an equal share (25 percent) of cleanup process costs alongside Boeing, the City of Seattle ("City"), and King County ("County") as part of the Lower Duwamish Waterway Group ("LDWG"). *See* Dkt. #1 at pp. 5-7 (¶¶ 17-25). Since 2014, the LDWG members and a few dozen other potentially responsible parties ("PRPs") have participated in good faith in the non-binding Allocation process aimed at achieving voluntary, out-of-court settlements to equitably allocate responsibility for the LDW cleanup under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA," 42 U.S.C. § 9601 *et seq.*), and Washington's Model Toxics Control Act ("MTCA," Wash. Rev. Code ch. 70A.305). Dkt. #12-1 at p. 1. The Allocation MOA explicitly contemplates that parties may complete the process and decline their share, which the Port has now done. *Id.* at p. 17.

The Port's non-binding Allocation share had two components:[1] a *de micromis* share based on the Port's responsibility for the limited contamination the allocator determined to have originated from Port-owned facilities along the LDW; and an arbitrary, irrationally large share based on the Port's inheritance of extremely limited property rights in some of the LDW's submerged lands from the former Commercial Waterway District No. 1 of King County upon its dissolution in 1963. Dkt. #1 at pp. 14-15 (¶¶ 63-68). The Port has no objection to its *de micromis* share based on alleged contributions of contamination from Port-owned terminals to the LDW, but the Port cannot accept the arbitrary and unwarranted "owner's share" to be shouldered by King County taxpayers when the party that is *by far* the most responsible for LDW

---

[1] Under the Allocation MOA, a party is free to disclose its own share. Dkt. #12-1 at p. 21.

**PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY** - 2
(2:22-cv-00993-RAJ)
116597963.1 0061365-00062

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Telephone 503.224.3380

1  contamination is known, solvent, and actively participating in cleanup efforts: Boeing.[2] The Port
2  stands by the "polluter pays" principle at the heart of CERCLA and MTCA and, in the many
3  months since the allocator issued his preliminary decision, the Port has made every effort to
4  negotiate reasonable settlements with its LDWG counterparts, without success as Boeing has
5  steadfastly refused to begin settlement discussions with the Port. Contrary to the assertions in
6  Boeing's motion (*see* Dkt. #10 at p. 2), the Port has been the primary proponent of settlement
7  discussions among the LDWG parties, but its efforts have gone unanswered.

### III.   ARGUMENT

The Court's power to stay this action is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). In the Ninth Circuit, discretionary stays are assessed under a three factor test: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). In addition, "if there is even a fair possibility that the stay . . . will work damage to some one [sic] else," the petitioner "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

---

[2] The inequity of this so-called "owner's share" – a direct reallocation of costs that are rightfully Boeing's – is compounded by recent data collected as part of the LDWG parties' remedial design work for the LDW cleanup. *See* Decl. of Maren R. Norton at pp. 1-2. That data clearly demonstrates that Boeing's contribution to PCB and other contamination in the LDW is significantly greater than was understood during the Allocation process. *Id.* The Allocation was premised on decades-old data underlying EPA's 2014 LDW Record of Decision and its estimated remedy footprint – data collected from 1990 to approximately 2012. *Id.*

PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY - 3
(2:22-cv-00993-RAJ)
116597963.1 0061365-00062

**A.      Granting Boeing's Request for a Stay Would Result in Harm to the Port.**

Boeing argues that a stay will not harm the Port, as it would only delay the Port's receipt of money. Boeing is wrong that the Port's efforts to recover past monetary damages should carry virtually no weight in the Court's analysis. *See, e.g.*, *D.C. by and through Garter v. Cty. of San Diego*, No. 15-cv-1868, 2017 WL 1365693, at *4 (S.D. Cal. Apr. 14, 2017) (denying motion to stay and finding that a stay may work damage to plaintiff: "Defendant may be correct that delay in monetary recovery might not on its own constitute a sufficient reason to deny a motion to stay, but it does not follow that a delay in monetary recovery . . . does not constitute even some damage to Plaintiff . . . .").

Moreover, Boeing ignores the fact that this lawsuit is not confined to past harms. Instead, the Port seeks correction of both past *and present, ongoing* economic injuries. *See* Dkt. #1 at p. 6 (¶¶ 18-21), p. 21 (¶¶ 95-98) and p. 24, (¶¶113-114) (Port continuing at present to pay part of Boeing's fair share for ongoing work, Port seeking declaratory judgments for costs it will incur). To this day, the Port continues subsidizing Boeing's cleanup process costs (i.e., remedial design costs). The disproportionate burden upon the Port (and, by extension, its taxpayers) will continue to grow until the parties settle or this Court renders a judgment correcting the imbalance. Staying this case will only prolong the very inequity the Port seeks to cure. And, as the Ninth Circuit has recognized, a party's efforts to correct "ongoing and future harm" carry significant weight in a court's analysis. *See Lockyear v. Mirant Corp.*, 389 F.3d 1098, 1112 (9th Cir. 2005) (vacating stay); *see also, e.g., North Fork Rancheria of Mono Indians of Calif. v. California*, No. 15-cv-419, 2016 WL 4208452, at *7 (E.D. Cal. Aug. 10, 2016) (denying stay and holding that "imposing a stay that would cause a plaintiff future economic harm . . . support[s] denial of a stay"); *Trotsky v. Travelers Indemn. Co.*, No. 11-cv-2144, 2013 WL 12116152, at *2 (W.D. Wash. Apr. 5, 2013) (denying stay where plaintiff sought both damages for past harm and a determination of defendants' future responsibilities, and noting that "courts more appropriately enter stay orders where a party seeks only damages, does not allege continuing harm, and does

PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY - 4
(2:22-cv-00993-RAJ)
116597963.1 0061365-00062

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Telephone 503.224.3380

not seek injunctive or declaratory relief since a stay would result only in a delay in monetary recovery").

**B. Boeing Will Suffer No Hardship or Inequity by Proceeding in This Litigation.**

*1. Boeing's motion to stay is premised on a timing crisis that does not exist.*

Boeing claims that, without a stay, it will be forced to assert – at some unspecified but imminent date[3] – contribution claims against the parties with whom it is currently negotiating potential settlements. Dkt. #10 at p. 2. This will, according to Boeing, "reopen old wounds, engender ill-will, and ultimately undo the hard work that the parties accomplished over the past eight years" in the LDW Allocation. *Id.* at p. 9. These statements are without merit and are transparent in their purpose – successful, apparently[4] – to strong-arm other Allocation parties into supporting Boeing under the threat of being brought into this litigation. *See, e.g.*, Dkt. #12-3 at p. 1. The reality is Boeing has substantially more time than it represents in which to either achieve settlements with other parties, or opt to assert contribution claims against them.

Boeing will suffer no inequity or hardship if its motion for a stay is denied. Although Boeing is correct that, if it fails to achieve settlements with other PRPs who then settle with the U.S. Environmental Protection Agency ("EPA") and receive "contribution protection" against third-party CERCLA section 113(f) claims (*see* 42 U.S.C. § 9613(f)(2)), Boeing would thereafter be barred from asserting contribution actions against such PRPs, this possible scenario is not imminent. Dkt. #10 at p. 8. By Boeing's own estimation, it lies at least eight months in the future, if it occurs at all. *Id.* at p. 1. EPA has not yet issued "special notice letters," the first administrative step in the often many-months-long process of negotiating consent decrees with

---

[3] For example, Boeing asserts that, if its motion for stay is not granted, it will likely be forced to assert protective claims "now." Dkt. #10 at p. 10.

[4] Although other Allocation parties have submitted communications in support of Boeing's motion to stay (*see, e.g.*, Dkt. # 12-3 at p.1), those endorsements should be taken in context. Those are parties that do not necessarily agree that Boeing *must* implead them absent a stay. But they know that Boeing *can* implead them if it so wishes – including if they decline to support Boeing's request for a stay. *See, e.g., id.* (email from counsel for the City, stating concern that Boeing may "*feel* it necessary" to file third-party claims (emphasis added)). The support is from those that do not want to be impleaded, not from those who agree that imminent impleading is in any way necessary.

PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY - 5
(2:22-cv-00993-RAJ)
116597963.1 0061365-00062

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Telephone 503.224.3380

1  PRPs. *Id.* at p. 10 n.5. There are also at least four months remaining in the Allocation's formal

2  settlement negotiation process for those parties who accepted their shares. *Id.* at pp. 5-6. Boeing

3  does not need a stay of this litigation in order to complete that process, and it will still have

4  months thereafter (prior to any party potentially receiving contribution protection) to either

5  successfully negotiate settlements or resort to litigation.

6        The Federal Rules of Civil Procedure likewise do not counsel in favor of a stay. Rule

7  14(a)(1) provides that a defendant may bring in a third-party defendant as of right within

8  "14 days after serving its original answer," and may do so thereafter with leave of the court,

9  which is a matter of the Court's discretion according to a four-factor test assessing:

10 "(1) prejudice to the original plaintiff; (2) complication of issues at trial; (3) likelihood of trial

11 delay; and (4) timeliness of the motion to implead." *Navigators Mgmt. Co., Inc. v. Expeditors*

12 *Int'l of Wash., Inc.*, No. 21-cv-1598, 2022 WL 656208, at *1 (W.D. Wash. Mar. 4, 2022). If this

13 case proceeds without a stay, the parties will be barely beginning discovery (if at all) by next

14 April – the time Boeing says it needs to have resolved settlements with other parties. Impleading

15 third parties at that time, if sought by Boeing, would not substantially disrupt this case,

16 particularly given that discovery is likely to be streamlined in this case based on the fact that

17 Boeing, the Port, and the City and County (two significant PRPs likely to be impleaded) have

18 already spent the last eight years conducting factual discovery through the Allocation. Dkt. #12-1

19 at pp. 8, 12-13.

20       Finally, even if Boeing were unable to implead parties in this case, for whatever reason,

21 Boeing could still bring contribution actions against other parties through a separate lawsuit. *See,*

22 *e.g.*, *Emps. Ins. of Wausau v. Musick, Peeler & Garrett*, 954 F.2d 575, 577 (9th Cir. 1992)

23 ("While actions for contribution are frequently brought in the context of third party practice, it

24 does not follow that third party procedure is the exclusive remedy. The right of contribution is

25 substantive in nature. Rule 14, like all of the Federal Rules of Civil Procedure, is purely

26 procedural. It does not create or modify any substantive rights, such as the right to

PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY - 6
(2:22-cv-00993-RAJ)
116597963.1 0061365-00062

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Telephone 503.224.3380

indemnification or contribution. Thus, a claim for contribution may be maintained in a separate action." (internal quotation marks and citation omitted)).

> 2. *Boeing misstates the law when asserting that, absent a stay, it will have to shoulder 100 percent of the Port's past costs.*

Boeing argues that unless it impleads other parties (imminently), it will be stuck "paying for 100% of the Port's alleged costs." Dkt. #10 at p. 8. That is untrue. Boeing can and presumably will counterclaim in this case and bring a contribution action against the Port under CERCLA section 113(f)(1), resulting in this Court "allocat[ing] response costs among [Boeing and the Port] using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Thus, even if Boeing never impleaded or settled with any third party, it would not be stuck with 100 percent of the Port's past costs.

Further, as discussed above, Boeing has several months (by its own estimation) in which it can bring contribution actions against other parties before they reach final settlements with EPA. Boeing and other PRPs may also waive contribution protection as to each other, or can address in their settlements how to allocate the risks of various outcomes for Boeing in this litigation, such that Boeing need not implead other parties in order for Boeing to realize the benefit of those parties paying their shares of LDW costs.

> 3. *It is well within the Court's authority and discretion deny a motion to stay amidst parallel proceedings.*

Courts commonly deny motions to stay cases pending the completion of administrative, arbitral, or similar "parallel" proceedings. *See, e.g.*, *Columbia Falls Aluminum Co. v. Atl. Richfield Co.*, No. 18-cv-131, 2020 WL 4382481, at *3-*4 (D. Mont. July 31, 2020) (requested stay pending EPA remedy selection denied because that would "not change which party is responsible for the hazardous substances requiring cleanup"); *Am. Honda Motor Co. v. Coast Distribution System, Inc.*, No. 06-cv-4752, 2007 WL 672521, at *1-*2 (N.D. Cal. Feb. 26, 2007) (parallel proceeding outcome would not be binding on court and a stay would "not help narrow

PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY - 7
(2:22-cv-00993-RAJ)
116597963.1 0061365-00062

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Telephone 503.224.3380

1  the issues for this Court or promote the orderly course of justice"). There is no compelling reason
2  why the Court should not exercise its discretion to deny Boeing's motion in this case.

3        The Port seeks cost recovery from Boeing and, at this time, Boeing alone. Boeing's
4  negotiations with other parties can proceed, but those negotiations will "not change which party
5  [as between the Port and Boeing] is responsible for the hazardous substances requiring cleanup"
6  according to this Court. *See Columbia Falls*, 2020 WL 4382481, at *3-*4. And, as in *American*
7  *Honda*, the parallel proceeding of Boeing and other parties negotiating settlements among
8  themselves will not be binding on this Court, further counseling against a stay.

9        Boeing's assertions regarding how a stay will significantly narrow the factual issues
10 before the Court and otherwise save judicial resources do not apply to this case as it stands now,
11 with the Port and Boeing as the sole litigants. Those assertions rest on Boeing's assertion that,
12 absent a stay, it would have to immediately implead several parties – a manufactured "necessity"
13 that simply does not exist. If Boeing is denied its requested stay (as it should be) and then
14 promptly impleads parties, that will be its choice, not something that this Court or the lack of
15 stay gave them "little choice" but to do.

16       The cases that Boeing cites in support of its motion are inapposite. First, *Confederated*
17 *Tribes & Bands of Yakama Nation v. Airgas USA, LLC*, 435 F. Supp. 3d 1103, 1127 (D. Or.
18 2019), differs from the present case in numerous respects – most notably that there, the plaintiff
19 did not oppose the motion to stay, whereas the Port *does* oppose Boeing's motion. In addition,
20 unlike the Port, the plaintiff (a federally recognized tribe) was receiving ongoing payments from
21 the defendants (before and during the stay) pursuant to EPA orders, mitigating harm to the
22 plaintiff; the motions for stay were filed seven to nine months into the case when dispositive
23 motions were pending; and there were 29 parties to the litigation seeking a stay. There was a
24 compelling argument that "the same complex legal and factual issues" were at issue in both the
25 litigation and the non-judicial allocation process, *id.* at 1128, unlike here, where this case
26 involves weighing facts and equitable factors only as between Boeing and the Port.

PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY - 8
(2:22-cv-00993-RAJ)
116597963.1 0061365-00062

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Telephone 503.224.3380

Boeing's reliance on *Bowman v. 71 at Tulsa Hills Apartments, L.P.*, is also misplaced. No. 19- cv-66, 2019 WL 3938479, at *1-*2 (N.D. Okla. Aug. 20, 2019); Dkt. #10 at p. 9. The imminent settlement conference in *Bowman* was between plaintiff and defendant – not third parties – and held the potential to resolve the entire lawsuit. In this case, any settlements Boeing reaches with third parties will have no impact on resolving the Port's claims against Boeing.

### C. A Stay Will Not Simplify Issues, Proof, or Questions of Law, As Boeing's Potential Settlements with Other Parties Would Not Reshape the Port's Claims.

Boeing argues that settlements that it might reach "would render the settling parties immune from contribution claims, making any prior litigation over such claims a waste of time." Dkt. #10 at p. 2. The statement is both ambiguous and untrue. With respect to the case as it stands now (with the Port and Boeing as the only litigants), litigation prior to Boeing or other parties potentially obtaining protection from CERCLA section 113(f) *contribution* actions would not be a waste of time and would not moot the Port's claim. The Port's claim against Boeing is for *cost recovery* under section 107(a) of CERCLA, not a contribution action under section 113(f). The Supreme Court has addressed this precise issue and confirmed that contribution protection under CERCLA settlements does not bar a section 107(a) cost recovery action. *See United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 129 (2007) (contribution protection under section 113(f) "does not by its terms protect against § 107(a) cost-recovery liability").

Boeing may be assuming a situation where, absent a stay, Boeing "now" impleads numerous third parties (Dkt. #10 at p.10), and litigation activities ensue over the next eight months, only to be mooted if those numerous third parties receive contribution protection via settlements with EPA. As described above in Section III.B, this scenario is not a necessity and there is no obligation or urgency that Boeing must "now" implead third parties absent a stay, triggering the need for more judicial resources and a wider ocean of facts before the Court. Boeing asks for a stay in order to conserve judicial resources that would otherwise be spent in service of *what Boeing might choose to do*; not what it *must* do.

PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY - 9
(2:22-cv-00993-RAJ)
116597963.1 0061365-00062

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Telephone 503.224.3380

Boeing also contends that its possible settlements with other parties "would set the responsibility of the participants but not the Port, rendering any prior litigation over the percentage of costs to be divided between the Port and Boeing in the lawsuit a waste of time." Dkt. #10 at p. 2. This makes no sense. Boeing and other parties are free to settle with one another based on what shares they deem fair for each other, but that in no way forces either the Port or this Court to accept any particular equitable allocation as between the Port and Boeing.

## IV. CONCLUSION

Boeing's requested stay is neither necessary nor warranted at this time. The Port respectfully asks the Court to deny Boeing's motion.

DATED this 29th day of August, 2022.

STOEL RIVES LLP

*/s/Maren R. Norton*
Maren R. Norton, WSBA No. 35435
maren.norton@stoel.com
James T. Graves, WSBA No. 48033
james.graves@stoel.com

Stoel Rives LLP
600 University St., Ste. 3600
Seattle, WA 98101
Tel.: (206) 624-0900

*Attorneys for Plaintiff Port of Seattle*

PORT OF SEATTLE'S OPPOSITION TO
THE BOEING COMPANY'S MOTION TO STAY - 10
(2:22-cv-00993-RAJ)
116597963.1 0061365-00062

STOEL RIVES LLP
ATTORNEYS
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
*Telephone 503.224.3380*