THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PORT OF SEATTLE,

          Plaintiff,

   v.

THE BOEING COMPANY,

          Defendant.

No. 2:22-cv-00993-RAJ

**THE BOEING COMPANY'S REPLY IN SUPPORT OF MOTION TO STAY**

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**INTRODUCTION**

2      This case should be stayed for eight months to allow Boeing and the other allocation

3  participants to complete their eight-year allocation process, reach settlements with each other, and

4  enter a consent decree with the EPA for the cleanup of the Lower Duwamish Waterway. The

5  settlements and consent decree will dramatically reshape this lawsuit by finalizing shares of

6  responsibility for dozens of parties, making it enormously inefficient to proceed now instead of

7  staying the case for a mere eight months. Commencing litigation now will also imperil the

8  allocation and settlement process because Boeing will face significant pressure to withdraw from

9  the process and join the allocation participants as parties to this lawsuit.

10      The Port suggests (at 6) that Boeing wait to join other parties because nothing much will

11  happen in this case between now and April. This dubious suggestion shows how little a stay will

12  harm the Port. Since the Port has excluded itself from the negotiations that the other allocation

13  participants are having with the EPA about the performance and payment for the remaining

14  cleanup, it is highly unlikely that the Port will establish that it has paid more than its fair share;

15  Boeing will prove at trial that the opposite is true. But, even if the Port establishes that it overpaid,

16  CERCLA allows the Port to be "made whole" because it authorizes the recovery of interest.

17

**ARGUMENT**

18  **A.    These proceedings will be significantly impacted by the resolution (or not) of the
         ongoing allocation and settlement process.**

19

20      The Port grossly oversimplifies the allocation this case will require, claiming it "involves

21  weighing facts and equitable factors only as between Boeing and the Port" (at 8) and that Boeing

22  "would not be stuck with 100 percent of the Port's past costs" (at 7). But as the Port acknowledges

23  (at 8), it "seeks cost recovery from Boeing and, at this time, Boeing alone." That is, the Port seeks

24  to recover *solely from Boeing* everything the Port has paid, and what it will pay in the future, above

25  what it believes is its fair share of costs—not just Boeing's equitable share of what the Port believes

26  it has overpaid. *E.g.*, Compl. ¶¶ 32, 35, 93.

BOEING'S REPLY IN SUPPORT OF
MOTION TO STAY
(No. 2:22-cv-00993-RAJ) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   The Port might think that its tunnel-visioned focus on Boeing is equitable. The Supreme

2   Court disagrees. The Court has observed that "[a] district court applying traditional rules of equity

3   would undoubtedly consider any prior settlement as part of the liability calculus." *United States v.*

4   *Atl. Rsch. Corp.*, 551 U.S. 128, 141 (2007). And many other courts have reasoned "'that a fair and

5   equitable allocation [can] only be achieved by comparing [a defendant's] role as a PRP [potentially

6   responsible party] to other PRPs.'" *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 19 (1st Cir. 2004)

7   (third alteration added) (citation omitted). Indeed, in other cases where a PRP plaintiff chooses—

8   as the Port has—to sue only one other PRP, courts have found it more equitable to leave the burden

9   of that decision on the plaintiff, rather than shifting all costs sought onto the lone defendant. *E.g.*,

10  *City of Bangor v. Citizens Commc'ns Co.*, 437 F. Supp. 2d 180, 225 (D. Me. 2006); *In re Kaiser*

11  *Gypsum Co.*, No. 16-31602, 2020 WL 6737641, at *19–20 (W.D. N.C. Nov. 13, 2020).

12      The Port cannot forcibly narrow the inquiry in an equitable allocation simply because it

13  was easier for the Port to sue only Boeing for all the costs it seeks. Boeing and the Port are not

14  solely responsible for all of the contamination of the waterway. Forty-three other parties

15  contributed to the contamination, and after an eight-year allocation process, Boeing and other

16  participants have accepted their allocated shares in the private allocation. Dkt. No. 12 at 2 ¶ 7.

17  Their shares are relevant to an equitable allocation of what the Port believes it has overpaid. The

18  difference, importantly, is that an allocation will be significantly more difficult, and discovery

19  along the way more uncertain and burdensome, if the Port can rush this proceeding before the other

20  parties' shares are finalized.

21      If the shares of the additional allocation participants are finalized in settlements between

22  those parties and with the EPA, then this Court can allocate what the Port has overpaid (if anything)

23  with the benefit of evidence about other parties' agreed-to shares. At that point, the Court will have

24  more clarity about the equitable redistribution of anything the Port has overpaid, and the Court

25  will be better-equipped to consider the responsibility of non-parties. Where, as here, another

26  proceeding may significantly affect the issues to be decided, a stay is appropriate—as judges in

BOEING'S REPLY IN SUPPORT OF
MOTION TO STAY
(No. 2:22-cv-00993-RAJ) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   this district have recognized. *See Naini v. King Cnty. Pub. Hosp. Dist. No. 2*, No. C19-0886-JCC,

2   2020 WL 468910, at *3 (W.D. Wash. Jan. 29, 2020); *Washington v. Trump*, No. C17-0141JLR,

3   2017 WL 2172020, at *3 (W.D. Wash. May 17, 2017).

4          That makes this case far different than *Columbia Falls Aluminum Co. v. Atlantic Richfield*

5   *Co.*, No. 18-cv-131, 2020 WL 4382481 (D. Mont. July 31, 2020). *Columbia Falls* also involved

6   the equitable allocation of liability for contamination at a Superfund site. *See id.* at *1–3. But

7   unlike here, the defendant did not ask the Court to stay the case pending the negotiation of a

8   consent decree that would determine the liability of many parties (including the defendant)

9   between each other and the government for contamination at the site. Instead, the defendant asked

10  the Court to stay the case while the EPA *selected a remedy* (i.e., decided how to best address the

11  contamination). *See id.* at *3. The Court concluded a stay was not warranted because (a) a court

12  can allocate the percentage of liability between parties before the government approves a

13  remediation plan and (b) the nature of a remediation plan is irrelevant to a party's liability. *See id.*

14  A court-approved consent decree, by contrast, will be relevant to the allocation of liability between

15  Boeing and the Port. Consequently, a stay is warranted here. *See Confederated Tribes & Bands of*

16  *Yakama Nation v. Airgas USA, LLC*, 435 F. Supp. 3d 1103, 1128 (D. Or. 2019) ("Plaintiff's claims

17  here present some of the same complex legal and factual issues that are presented by the ongoing

18  non-judicial allocation process.").

19         The Port ignores (at 5) how this case is unique, in large part, because of its own actions. In

20  a typical case, this Court would have all identifiable PRPs before it. And because of that, and

21  because the Port's claim as a fellow PRP itself is for several liability only, the Court would be

22  faced with "effectively a contribution suit between and among potentially responsible parties,"

23  "including the party that filed the § 107(a) action." Minute Order at 1–2, *Seattle Times Co. v.*

24  *LeatherCare, Inc.*, Case 2:15-cv-01901-TSZ, (W.D. Wash. Oct. 3, 2017), ECF No. 99. But the

25  Port has sued only Boeing, apparently to try to force on Boeing the burden of proving the

26  responsibility of other parties—something those parties would normally be present to show—in

BOEING'S REPLY IN SUPPORT OF
MOTION TO STAY
(No. 2:22-cv-00993-RAJ) – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

order to prove Boeing's own equitable share vis-à-vis those other parties. The Court should consider the responsibility of *all* parties for the contamination at the Lower Duwamish Waterway, and it will be easier and more efficient to do so in light of final settlements and a consent decree with the EPA.

The calculation here is simple. A temporary pause ensures that this Court can efficiently consider the best evidence of what's equitable in this unique and complex case, rather than forcing the Court to wade into (and Boeing to argue about) that complexity while the facts are still in flux. The alternative is to proceed now with litigation between all of the parties, needlessly complicating this matter and potentially further delaying an environmental remedy.

**B.      A stay is needed to protect the ongoing allocation and settlement process.**

A stay is also necessary to protect the settlement and allocation process itself. Boeing, the other allocation participants, and the Port devoted eight years and millions of dollars to a thorough and comprehensive allocation process, resulting in an over 4,000-page decision from the allocator assigning shares of responsibility to each allocation participant. As the Port makes clear (at 2), the Port has rejected its share. The Port was within its rights to decline the share assigned to it, but its lone wolf choice should not topple the multi-year allocation process.

As explained in the Declaration of King County's Dwight Dively and the statements of support from the City of Seattle and 28 other allocation participants, litigation among the participants likely would terminate the settlement negotiations. The following is just a sampling of their concerns:

- King County: litigation among allocation participants "would jeopardize these ongoing settlement negotiations at this critical juncture." Dkt. No. 11 at 2 ¶ 8.

- City of Seattle: third-party claims "likely would interfere with and potentially would end settlement negotiations." Dkt. No. 12-3 at 2.

- Northwest Container Services, Inc.: "[F]ocused efforts over the next few months will allow the allocation parties to reach cash-out settlement agreements and for the allocation

BOEING'S REPLY IN SUPPORT OF
MOTION TO STAY
(No. 2:22-cv-00993-RAJ) – 4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    participants and EPA and DOJ to negotiate and execute a consent decree that will end

2    NWS's involvement at the site without litigation." Dkt. No. 12-10 at 2.

3    • Manson Construction Co.: "It would be a serious injustice to force the de minimis parties

4       who have engaged in the Allocation process for the last eight years to now start over in

5       litigation." Dkt. No. 12-15 at 2.

6    • Counsel for 12 parties: A stay will "facilitate the consent decree process and will likely

7       avoid a multi-party lawsuit that would unnecessarily waste judicial resources and cause the

8       parties who participated in good faith in an eight-year allocation process to incur additional

9       attorneys' and expert fees." Dkt. No. 12-20 at 2.

10       The Port misses the point with its argument (at 5) that Boeing will not be "forced" to

11   immediately add third parties if a stay is denied. The Port seeks to put Boeing alone in jeopardy of

12   shouldering a disproportionate share of past costs and a greater-than-equitable share of costs for

13   the future remedy. Boeing cannot take the risk of litigating the Port's theory without the certainty

14   of final settlements this Court can consider in an allocation or the presence of all parties ensuring

15   equitable contribution between all parties. This predicament is what led the court in *Yakama Nation*

16   to stay the case to avoid disrupting a non-judicial allocation process. *See* 435 F. Supp. 3d at 1128.

17       Even if Boeing could wait months to bring contribution claims against the other allocation

18   participants (an option that presumably was available to the defendants in *Yakama Nation*), forcing

19   Boeing to wait is both inefficient and inequitable. The case will be significantly disrupted if parties

20   are added after discovery has begun and dispositive motions have been filed. The joined parties

21   will also be prejudiced if the Court does not postpone the proceedings, because they will lose out

22   on months during which they could have brought motions and engaged in discovery. And to the

23   extent a party is harmed if it must wait to litigate a claim, Boeing faces the same harm from a self-

24   imposed stay that the Port faces from a court-issued one. Rather than prioritize the Port's claims

25   over Boeing's, the Court should require both parties to litigate their claims after the eight-year

26   settlement and allocation process is complete.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**C.      A slight delay will not meaningfully harm the Port at all.**

These potential harms and inefficiencies far outweigh the minimal harm that a short stay might cause the Port. Citing a district court case from California, the Port insists that a delay in monetary recovery "constitute[s] . . . some damage" (at 4). But the "damage" the Port might suffer is not *meaningful* because, as Judge Coughenour explained in *Naini*, "money damages compensate a plaintiff for their injury regardless of when the money damages are awarded." 2020 WL 468910, at *2. Which is why this Court held that "a potential delay in the recovery of money damages, . . . on its own, is insufficient to warrant denial of a stay." *Ten Bridges LLC v. Hofstad*, No. 19-cv-01134-RAJ, 2020 WL 6685153, at *2 (W.D. Wash. Nov. 12, 2020).

The Port tries to get around this issue by pointing out that it "seeks correction of both past, *and present, ongoing* economic injuries" (at 4). But any future judgment will fully compensate the Port for the money it might spend in the next eight months, *with interest*, so the logic from *Naini* should still govern. *See* 42 U.S.C § 9607(a) (allowing a party to recover interest). None of the cases cited by the Port excuse its failure to quantify the harm it might suffer from a stay. In *Trotsky v. Travelers Indemnity Co.*, No. C11-2144-JCC, 2013 WL 12116152, at *3 (W.D. Wash. Apr. 5, 2013), Judge Coughenour said the plaintiff's request for prospective relief weighed only "slightly" against a stay. In *North Fork Rancheria of Mono Indians of Cal. v. California*, 15-cv-00419-AWI-SAB, 2016 WL 4208452, at *7 (E.D. Cal. Aug. 10, 2016), a favorable judgment would not have compensated the plaintiff for the gaming revenue it would have lost while a stay was in place. Likewise, in *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005), a favorable judgment would not have compensated the third-party electricity consumers who faced substantial "ongoing and future harm" from the defendant's "illegal concentration of market power."

### CONCLUSION

The Court should stay this case for eight months. Staying the case will protect the allocation and settlement process and save party and judicial resources without harming the Port.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

Dated: September 2, 2022

2

By:   s/ Mark W. Schneider
Mark W. Schneider, WSBA No. 14105
Kathleen M. O'Sullivan, WSBA No. 27850
Meredith R. Weinberg, WSBA No. 45713
Katherine E. Page, WSBA No. 32903
Marten N. King, WSBA No. 57106
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
MWSchneider@perkinscoie.com
KOSullivan@perkinscoie.com
MWeinberg@perkinscoie.com
KPage@perkinscoie.com
MKing@perkinscoie.com

Attorneys for Defendant
The Boeing Company

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26